UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60781-CIV-SINGHAL

YOEL ACOSTA GONZALEZ,

     Petitioner,

v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security, *et al.,*

     Respondents.

_____/

### **ORDER**

Petitioner is a Cuban citizen who entered the United States without inspection on October 12, 2023, near Eagle Pass, Texas.  (DE [1] ¶ 16).  After crossing the United States border, Petitioner was quickly detained by U.S. Border Patrol Agents, who determined that Petitioner was not a resident or citizen of the United States.  (DE [10-1]).  On October 14, 2023, Petitioner was issued a Notice to Appear ("NTA"), charging him with inadmissibility under the Immigration and Nationality Act ("INA") and initiating removal proceedings. (DE [10-2]).  He was subsequently released on an order of recognizance pursuant to 8 U.S.C. § 1226.  (DE [10-3]).  After his release, Petitioner moved to Florida and applied for asylum from Cuba. (DE [1] ¶ 22).  Petitioner remains in removal proceedings under 8 U.S.C. § 1229.  (DE [12] at 3).

On March 4, 2026, Petitioner was re-detained by ICE officers following a traffic violation.  (DE [10-4] ¶ 11).  On the same day, he was transferred to the Broward Transitional Center, where he is currently detained.  (DE [10-5]).  Petitioner then filed the present Petition for Writ of Habeas Corpus (DE [1]).  Despite Petitioner's initial release

under an order of release on recognizance pursuant to 8 U.S.C. § 1226, Respondents now contend that he is properly detained under 8 U.S.C. § 1225(b)(2). (DE [10] at 4).  For the reasons discussed below, the Court finds that Petitioner's detention is lawful.  The Petition (DE [1]) is therefore denied.

### I.      LEGAL STANDARD

District courts have authority to grant writs of habeas corpus.  28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### II.     DISCUSSION

As it must, the Court first considers Respondents' jurisdictional arguments and, concluding it maintains jurisdiction, turns to the Petition's merits.

A. Jurisdiction.

First, Respondents contend that 8 U.S.C. § 1252(g) bars jurisdiction to review the Petition. Section 1252(g) strips this Court's jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." § 1252(g). But § 1252(g) must be read "narrow[ly]," *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999), and "bars only those claims that directly relate to the 'three specific actions' it lists." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). While Petitioner's detention is related to the

2

government's decision to commence removal proceedings against him, it is not "directly related" to that decision. *See Jennings*, 583 U.S. at 281 (adjudicating petition for habeas corpus challenging mandatory detention under 1226(c) notwithstanding § 1252(g)). The fact that Petitioner had been in removal proceedings for over two years before his current detention is evidence of that distinction. Accordingly, § 1252(g) does not strip jurisdiction over the instant Petition.

Next, Respondents argue that § 1252(b)(9) prohibits this Court's jurisdiction over the Petition. Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." § 1252(b)(9). It also expressly bars habeas jurisdiction over same. *Id.* But in *Jennings v. Rodriguez*, six justices agreed for different reasons that section 1252(b)(9) did not strip jurisdiction to review a detained alien's habeas petition seeking bond. *See Jennings*, 583 U.S. at 294–95 (Alito, J., opining and joined by Roberts and Kennedy) and *id.* at 355 (Breyer, J., dissenting and joined by Ginsburg and Sotomayor). The narrower of the two rationales explained that when an alien detainee does not seek "review of an order of removal[,] . . . challeng[e] the decision to detain them in the first place or to seek removal[,] [or] . . . challeng[e] any part of the process by which their removability will be determined, . . . § 1252(b)(9) does not present a jurisdictional bar." 583 U.S. at 294–95. So too here. Petitioner does not seek review of a final order of removal or challenge any of the aforementioned items. Rather, he requests immediate release from detention or a bond hearing.  Accordingly, § 1252(b)(9) does not bar jurisdiction.

3

B. Statutory Analysis.

The Court next considers Petitioner's argument that his detention is governed by 8 U.S.C. § 1226 rather than § 1225(b)(2), therefore entitling him to a bond hearing. (DE [12] at 5). This Court has previously explained that aliens present in the United States without admission are "applicants for admission" for purposes of the INA.  *See, e.g.*, *Morales v. Noem*, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026); *Banchi v. Diaz*, No. 0:25-cv-62341 (S.D. Fla. Feb. 2, 2026); *Doria v. Warden, Broward Transitional Center*, No. 0:26-cv-60112 (S.D. Fla. Feb. 9, 2026).  Multiple courts of appeals have done the same.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026).

Section 1225(a)(1) defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . ." Meanwhile, § 1101(a)(13)(A) provides that the "terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."

There appears to be no genuine dispute that Petitioner entered the United States in October 2023 without inspection and has not since been lawfully admitted by an immigration officer.  (DE [10-2]).  Thus, despite being physically present in the country for over two years, he remains an applicant for admission under the INA. This much Petitioner does not seriously contest. Rather, he argues that he is no longer "seeking admission" to the United States, and consequently not subject to the mandatory detention provision in § 1225(b)(2). But as this Court has recently held, § 1225's references to "applicants for admission" and those "seeking admission" refer to the same group of aliens. *See Morales*, 2026 WL 236307, at *5. As an applicant for admission, Petitioner is

4

necessarily seeking admission within the statutory framework that Congress created. *Id.* Therefore, Petitioner is subject to mandatory detention pursuant to § 1225(b)(2). *Id.*, at *8.

Petitioner further argues that because his initial detention upon entering the United States and subsequent release on his own recognizance were pursuant to § 1226, any re-detention must occur under the same section. As he explains, "[f]rom the date of Petitioner's entry, DHS has labeled Petitioner's status as falling under 8 U.S.C. 1226(a)." (DE [12] at 9). To be sure, both the Warrant for Arrest (DE [1-2]) and Order of Release on Recognizance (DE [1-3]) explicitly cited "section 236 of the Immigration and Nationality Act." Petitioner therefore contends that his current detention must also be governed by § 1226, entitling him to a bond hearing before an immigration judge.

But, as another court recently noted, "[t]hat is not what the relevant statute says." *Chen v. Almodovar*, 2025 WL 3484855, at *7 (S.D.N.Y. Dec. 4, 2025). Section 1226(b) states that the "Attorney General at any time *may* revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." § 1226(b) (emphasis added). This provision makes two things clear. First, an order of release on recognizance is purely discretionary and may be cancelled at any time, even when the alien does not violate the terms of release. Second, while the government "may" rearrest the alien under the initial warrant, it is not required to do so. Nor has Petitioner pointed to any other provision of the INA that would require re-detention under § 1226. Because Petitioner's status as an applicant for admission remains unchanged, the government may lawfully detain him pursuant to § 1225(b)(2).

### C. Due Process.

Next, Petitioner argues that his detention is prolonged and potentially indefinite, in

violation of the Due Process Clause of the Fifth Amendment. (DE [1] ¶ 83). Petitioner correctly notes that generally, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Yet the *Zadvydas* Court also explained that the "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* For those aliens that have not "effected an entry" into the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). In *Thuraissigiam*, the Court wrote that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 215 (1953)). Thus, the Court held that an alien who "enter[ed] the country illegally and was apprehended just 25 yards from the border" had not "effected an entry" and therefore was entitled to nothing more than statutory process. *Id.* at 140.

The same is true here. Petitioner entered the United States illegally on October 12, 2023, and was immediately detained by U.S. Border Patrol Agents. (DE [10-1]). Despite being released on his own recognizance, Petitioner has been in removal proceedings continuously since 2023. (DE [12] at 3). Therefore, for due process purposes, Petitioner is treated "as if stopped at the border." *See Mezei* 345 U.S. at 215. Under *Thuraissigiam* and *Zadvydas*, Petitioner did not effect an entry into the United States, and thus is only entitled to the due process rights provided by Congress. *Thuraissigiam*, 591 U.S. at 138-140.

Congress has provided that aliens in Petitioner's position are subject to mandatory detention pursuant to § 1225(b)(2) for removal proceedings under § 1229(a). § 1225(b)(2)(A). Petitioner has been detained since March 4, 2026, during his ongoing removal proceedings (DE [1] ¶ 77) and was scheduled for his next immigration court hearing on April 1, 2026. (DE [10-4] ¶ 13). Petitioner is not entitled to further procedural protections than those he has been provided. This is particularly true considering that the "[Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Accordingly, the Court rejects Petitioner's due process claim.

### D. Equal Protection.

Petitioner alleges that his ongoing detention violates the equal protection principles embodied in the Due Process Clause of the Fifth Amendment. (DE [1] ¶¶ 89-94). According to Petitioner, by being subjected to mandatory detention under § 1225(b), he is being treated differently from other aliens in removal proceedings that have been afforded a bond hearing under § 1226.

Petitioner concedes that any such disparate treatment is subject to rational-basis review. (DE [1] ¶ 94). "Because of Congress' plenary power over aliens, federal classifications … are valid if not arbitrary or unreasonable." *Yeung v. I.N.S.*, 76 F.3d 337, 339 (11th Cir. 1995). This Court must uphold the legislation if it is "rationally related to a legitimate government purpose." *Id.*

The mandatory detention framework at issue easily passes muster under rational-basis review. As discussed above, § 1225(b)(2) governs those aliens that entered the United States unlawfully and have not been admitted. Congress could rationally conclude, as it has, that detention is necessary to ensure the removal of aliens that are not lawfully

7

entitled to remain in the country. Under rational-basis review, that is all that is required. Thus, there is no violation of Petitioner's equal protection rights.

E. *Accardi* Doctrine.

Petitioner further attacks his detention on the grounds that DHS violated its own binding regulations, and therefore the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The *Accardi* doctrine "stands for the unremarkable proposition that an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). In particular, Petitioner points to 8 C.F.R. § 287.8(c) which provides, in relevant part, that immigration officers may only make warrantless arrests if they "ha[ve] reason to believe that the person is likely to escape before a warrant can be obtained."

Essentially, Petitioner argues that because he was arrested without a warrant and the government did not show that he was "likely to escape before a warrant [could] be obtained", that his ongoing detention is unlawful. (DE [1] ¶¶ 112-16). In the context of habeas petitions, however, "courts have long recognized that an unlawful arrest, by itself, doesn't warrant release." *See Buriev v. Warden, GEO, Broward Transitional Ctr.*, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025). In other words, if the government has lawful grounds to detain Petitioner pending his removal, he is not entitled to habeas relief based on a defective arrest. *See A.E. v. Powell*, 2026 WL 782294, at *3 (N.D. Ala. Mar. 19, 2026). Indeed, the Supreme Court has held that "if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu*, 142 U.S. at 662.

As already discussed, the government does have lawful grounds to detain Petitioner in this case. Despite being released into the country on his own recognizance,

8

Petitioner's status as an applicant for admission has not changed. *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) ("The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status . . .")  Accordingly, under a plain reading of § 1225(b)(2), the government has lawful authority to detain Petitioner as it pursues his removal. The Court therefore finds no grounds for relief on this basis.

F. Administrative Procedure Act.

Next, Petitioner contends that DHS has acted arbitrarily and capriciously, in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A). In Petitioner's words, "DHS has unlawfully transformed a discretionary detention framework into a blanket detention rule, substituting categorical inaction for the case-by-case decision making required by the INA and the APA." (DE [1] ¶ 129). Moreover, he alleges that DHS has "failed to provide a reasoned explanation for its abrupt departure from decades of settled administrative practice . . ." (DE [1] ¶ 131).

To be sure, the government has changed its longstanding practice of detaining aliens under § 1226(a). "While that is true, the government's past practice has little to do with the statute's text. The text says what it says, regardless of the decisions of prior Administrations. Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." *Buenrostro-Mendez*, 166 F.4th at 506. The statutes in question were duly enacted by Congress; this Court has the obligation to interpret those statutes. *Loper-Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L. Ed. 60 (1803)). And, based on its interpretation of § 1225(b)(2), this Court concludes that the Executive Branch has acted within its authority in enforcing it by taking Portioner into custody pending removal

9

proceedings. Thus, the Court does not find that DHS acted arbitrarily and capriciously in enforcing the plain meaning of the INA.

G. Suspension Clause.

The Court briefly notes that Petitioner's Suspension Clause claim is unfounded. Petitioner alleges that the "Suspension Clause forbids the government from implementing a detention scheme that eliminates all meaningful opportunity for detainees to test the legality of their confinement" and therefore "*habeas corpus* relief is constitutionally required." (DE [1] ¶¶ 105-09). Yet as this Order makes clear, Petitioner's claims have been heard on the merits.

III.   **CONCLUSION**

For the reasons discussed above, the Court concludes that Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2).  Petitioner is not entitled to release or a bond hearing pending removal.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Petition (DE [1]) is **DENIED**.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 20th day of April 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF